Hand-Delivered

FILED
CHARLOTTE, NC

AUG 1 8 2025

US DISTRICT COURT
WESTERN DISTRICT OF NC

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
Charlotte Division

Case No.: 3:25-cv-00609-MOC-DCK

**Shameka Knotts,**
Plaintiff,

v.

**EQUIFAX INFORMATION SERVICES, LLC;**
**EXPERIAN INFORMATION SOLUTIONS, INC;**
**TRANS UNION, LLC;**
**NATIONAL CREDIT SYSTEMS, INC.;**
**REDWOOD CONCORD APARTMENTS /**
**BIRCHWOOD MANAGEMENT; NATIONAL FINANCE COMPANY;**
**CREDIT FINANCIAL GROUP, LLC;**
**GLOBAL LENDING SERVICES, LLC;**
**VERIZON WIRELESS / CELLCO PARTNERSHIP;**
**CREDIT ONE BANK, N.A.,**
Defendants.

## AMENDED COMPLAINT AND JURY DEMAND

Plaintiff, Shameka Knotts, by way of this Amended Complaint against Defendants, alleges as follows:

### I. JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. §1331 as this action arises under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 et seq., the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 et seq., and related North Carolina statutes.

2. Venue is proper under 28 U.S.C. §1391(b) because Defendants transact business in this District and a substantial part of the events giving rise to the claims occurred here.

## II. PARTIES

3. Plaintiff Shameka Knotts is a resident of Charlotte, North Carolina.

4. Defendants Equifax, Experian, and Trans Union are consumer reporting agencies ("CRAs") as defined by the FCRA.

5. Defendants National Credit Systems, Redwood Concord/Birchwood, National Finance, Credit Financial Group, Global Lending Services, Verizon Wireless, and Credit One Bank are furnishers and/or debt collectors subject to the FCRA, FDCPA, and North Carolina consumer protection laws.

## III. FACTUAL ALLEGATIONS

6. Plaintiff obtained credit reports from Equifax, Experian, and Trans Union which contained inaccurate, inconsistent, and derogatory tradelines relating to accounts furnished by Defendants.

7. Beginning in 2023, Plaintiff submitted disputes regarding multiple tradelines, including Global Lending Services, National Credit Systems, National Finance Company, Verizon Wireless, Credit One Bank, and Credit Financial Group.

8. In response, Equifax issued "frivolous dispute" letters (Exh. A). At the same time, the Consumer Financial Protection Bureau ("CFPB") accepted and processed Plaintiff's complaints regarding these same tradelines. Under 12 C.F.R. §1022.43(f), CRAs cannot block consumer disputes by labeling them frivolous, nor can the CFPB refuse intake of complaints absent statutory grounds. The CFPB's acceptance of Plaintiff's complaints demonstrates they were not frivolous as a matter of regulatory practice.

9. Despite notice of disputes, Equifax, Experian, and Trans Union "verified" inaccurate tradelines furnished by GLS, Verizon, National Credit Systems, National Finance, Credit One, and Credit Financial.

10. Within days of Plaintiff's CFPB filings, Defendants furnished new derogatory notations. The close temporal proximity between Plaintiff's protected complaints and the adverse reporting supports a reasonable inference of retaliatory motive.

11. Furnishers including GLS, Verizon, NCS, National Finance, Credit Financial, and

    Credit One repeatedly verified false balances and derogatory payment histories without

meaningful investigation, in violation of 15 U.S.C. §1681s-2(b)

12. On July 31, 2025, Plaintiff issued a written preservation and demand letter via the CFPB complaint portal, placing Defendants on notice of pending litigation and their duty to preserve all records, audit logs, and electronic data.

13. By August 4, 2025, instead of suspending activity, Defendants continued to access and alter Plaintiff's credit files, including changing date-of-first-delinquency notations, updating balances, and modifying derogatory tradelines.

14. On July 31, 2025, Plaintiff's eviction case involving Birchwood Commons One LLC was reopened in state court. Despite already receiving rent bond payments through the court, Birchwood caused a post-eviction collection to be reported by National Credit Systems in the amount of $11,848, without a money judgment. This double-collection scheme demonstrates willful disregard of Plaintiff's rights. August 11, 2025, in Plaintiff's related state-court eviction matter, the court formally set a hearing for September 4, 2025. That scheduling occurred after Defendants had already been placed on litigation notice (7/31/25), further underscoring that collection activity and credit reporting continued even while Plaintiff was actively litigating, compounding prejudice and damages..

15. Such conduct constitutes, or will be shown through discovery to constitute, spoliation and intentional alteration of evidence after notice, warranting sanctions and adverse inference..

16. As a direct result of Defendants' actions, Plaintiff has suffered credit denials, continued collection activity even during litigation, reputational harm, and emotional distress.

17. Defendants possess records in their exclusive control which will further confirm these violations, including but not limited to:

- Cross-bureau tradeline history logs (Exh. A);
- Letters sent to Plaintiff labeling her disputes "frivolous" (Exh. B);
- Furnisher verification records relied upon despite contrary evidence (Exh. C);
- Collection letters and denial notices issued after disputes and during litigation (Exh. D);

## IV. CAUSES OF ACTION

### Count I – FCRA §1681e(b) (Accuracy)
17. Defendants Equifax, Experian, and Trans Union failed to follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit information.
18. Cross-bureau inconsistencies in tradeline histories will be shown in records Defendants maintain (Exh. A).

### Count II – FCRA §1681i(a) (Reinvestigation)
19. Equifax improperly deemed Plaintiff's disputes "frivolous" despite CFPB's acknowledgement of those disputes.
20. Defendants failed to conduct lawful reinvestigations as required under §1681i(a). 21. Letters sent to Plaintiff (Exh. B) demonstrate this improper handling.
22. Audit logs will show Defendants altered files after 7/31/25 preservation notice, undermining any reinvestigation defense.

### Count III – FCRA §1681s-2(b) (Furnisher Duties)
23. Furnishers including GLS, Verizon, NCS, National Finance, Credit One Bank, and Credit Financial Group verified disputed tradelines without conducting reasonable investigations. 24. Verification records (Exh. C) will show reliance on incomplete or false information, compounded by alterations made post-7/31/25.

### Count IV – Retaliation & Willful Noncompliance
25. Following Plaintiff's CFPB filings, additional derogatory tradelines appeared. The timing and sequence of these new notations, occurring within days of protected activity, supports a reasonable inference of deliberate retaliation.
26. Communications between CRAs and furnishers after CFPB complaints (Exh. D) will confirm willfulness.
27. Defendants' continued tampering with Plaintiff's credit files after 7/31/25 further demonstrates retaliatory motive.

### Count V – FDCPA §§1692e, 1692f (Misrepresentation & Abuse)
28. Defendants NCS, Credit Financial, Verizon, Credit One Bank, National Finance, and Global Lending misrepresented balances and pursued collections despite disputes. 29. Collection notices and account logs will demonstrate misrepresentation.

### Count VI – FDCPA §1692c (Contact During Litigation)
30. Debt collectors, including NCS, Credit Financial, and Global Lending Services, contacted Plaintiff regarding disputed debts after litigation commenced, in violation of §1692c.
31. Logs and collection communications (Exh. D) will confirm these contacts.

### Count VII – N.C. Debt Collection Act (NCDCA)

32. Defendants engaged in unfair, deceptive, and harassing collection practices in North Carolina, including inflated balances and repeated contacts.

### Count VIII – UDTPA (N.C. Gen. Stat. §75-1.1)

33. Defendants engaged in unfair and deceptive trade practices affecting commerce, as shown by patterns of misconduct and consumer complaints lodged with the CFPB and NC Attorney General.

### Count IX – Negligence

34. Defendants breached duties of care owed to Plaintiff by failing to ensure accuracy, failing to reinvestigate disputes, and altering records after preservation notice.

### Count X – Defamation / Libel Per Se

35. Defendants published false credit information to third parties, including potential creditors and landlords, proximately causing Plaintiff reputational harm and denial of credit.

## V. DAMAGES

36. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered:

    - Out-of-pocket losses;
    - Denial of credit and housing opportunities;
    - Emotional distress;
    - Damage to reputation.

37. Plaintiff seeks statutory, actual, punitive, and spoliation-related sanctions.

38. Plaintiff anchors damages at **$50,000,000**, reflecting the seriousness and scope of Defendants' misconduct, including over ten years of harm from National Finance's reporting.

39. Plaintiff notes that prompt resolution in settlement would mitigate exposure; however, should discovery proceed, Plaintiff will compel production of:

    - Compliance manuals and quality-control logs;

    - CFPB and Attorney General complaint records;

    - Employee records;

- All training modules in effect during the relevant reporting periods, including year-specific updates;

- Employee compliance certificates demonstrating current certification status;

- System update and maintenance logs reflecting required patches, upgrades, and quality-control checks tied to accuracy obligations.

## VI. JURY DEMAND

40. Plaintiff demands a trial by jury on all issues so triable.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

- Statutory damages as permitted under the FCRA, FDCPA, NCDCA, and UDTPA;

- Actual damages, including emotional distress, denial of credit, and reputational harm;

- Punitive damages for willful misconduct;

- Sanctions and adverse inference for spoliation of evidence post-7/31/25;

- Injunctive relief requiring permanent deletion of inaccurate tradelines to the extent they remain, and prohibiting re-reporting or reinsertion of any tradelines previously deleted from Plaintiff's credit reports;

- Pre- and post-judgment interest;

- Attorney's fees and costs of suit;

- Such other and further relief as this Court deems just and proper.

Respectfully submitted,

*[signature: Shameka Knotts]*

**Shameka Knotts**
5113 Cameron Commons Pkwy
Charlotte, NC 28262
Email: mekaeast@gmail.com
Plaintiff, Pro Se

Dated: August 18, 2025